IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NINA KRISTIANSEN,            )
                             )
        Plaintiff,           )   Civ. No.  07-CV-0233-TC
                             )
    vs.                      )
                             )
                             )   FINDINGS AND RECOMMENDATION
                             )
MICHAEL J. ASTRUE,           )
Commissioner of Social Security,)
                             )
        Defendant.           )
_____)

Coffin, Magistrate Judge:


    Plaintiff, Nina Kristiansen, seeks review of a final decision of the Commissioner denying her application for Social Security disability and Supplemental Security Income disability benefits. Before the court is plaintiff's complaint (#2). For the reasons that follow, the decision of the Commissioner should be reversed and the matter remanded for further proceedings.


### Background

    Plaintiff alleges disability beginning December 31, 2002, based on combined impairments including multiple chemical

1 Findings and Recommendation

sensitivities and borderline intellectual functioning. Her applications for disability and social security income payments were denied initially and upon reconsideration. Tr. 41, 550, 558. At an initial hearing, the ALJ determined additional medical testing was necessary. Tr. 591-603. After a second hearing, the ALJ issued a decision finding plaintiff not disabled. Tr. 14-32. The record before the ALJ contained, among other evidence, lay witness testimony by plaintiff's father, medical source testimony from a number of physicians, and plaintiff's subjective reports. Particular parts of the record will be discussed below in the context of analyzing plaintiff's claims before this court.

At step one of the five-step sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. Tr. 18, 31. At step two, the ALJ found that plaintiff had one severe impairment, a history of multiple chemical sensitivities. Tr. 22. At step three, the ALJ found that plaintiff's impairments did not meet or equal the requirements of a listed impairment. Tr. 31. The ALJ determined that plaintiff had the residual functional capacity to perform medium exertion work, but must avoid driving and cleaning work due to the multiple chemical sensitivities condition. Tr. 23. At step four, the ALJ found that plaintiff was able to perform her past relevant work as a medical records clerk, laboratory assistant, coffee maker, waitress, clerical worker, and bookkeeper, but not as a driver or housecleaner. Tr. 30-31. On this basis, the ALJ concluded that plaintiff was not disabled at

2 Findings and Recommendation

any time since her alleged onset date. Tr. 31. The Appeals Council denied her request for review. Tr. 8.

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income disability benefits. In plaintiff's view, the ALJ erred in a number of respects and arrived at conclusions that lack substantial evidence and are contrary to law. Plaintiff disputes the ALJ's findings at steps two, three, and four. In particular, plaintiff asserts that the ALJ erred in finding plaintiff's mental impairments not severe, rejecting plaintiff's testimony regarding her limitations, rejecting lay evidence, rejecting medical source opinions, and in posing an improper vocational hypothetical to the vocational expert. As explained below, the decision of the Commissioner should be reversed and the case remanded for further proceedings.

## Discussion

### Plaintiff's mental impairments

Plaintiff contends that the ALJ erred in not following agency regulations for evaluating mental impairments. The record supports plaintiff's argument. In July 2004, clinical psychologist Daryl Birney performed a consultative neuro-psychological examination and personality assessment. Tr. 400-23. Plaintiff underwent a number of diagnostic tests (Wechsler intelligence and memory scales (WAIS-III), Trailmaking A & B,

3 Findings and Recommendation

Aphasia Screening, and Minnesota Multiphasic Personality Inventory-2 (MMPI), and background and mental status interviews. Based on those results, and on a review of prior medical records, Birney diagnosed plaintiff with undifferentiated somataform disorder; depressive disorder NOS, and borderline intellectual functioning, and assigned a Global Assessment Functioning score of 50. Tr. 400-03. Birney also found that plaintiff had moderate limitations in the ability to understand and remember detailed instructions; carry our detailed instructions; make judgements on simple work-related decisions; interact appropriately with the public, supervisors, and co-workers; respond appropriately to work pressures in a usual work setting; and respond appropriately to changes in a routine work setting. Tr. 422-23.

The ALJ determined that plaintiff did not have any medically determinable severe mental impairments. Tr. 22-23. The ALJ explained that "claimant has not had any mental health treatment," and surmised that her GAF score was attributable to her multiple chemical sensitivities. Tr. 22. He added that Birney noted that plaintiff's MMPI profile was "of questionable validity," and might have affected findings on the WAIS-III. He noted that plaintiff completed the GED and was capable of semi-skilled work in the past, and that she used alcohol as a diuretic. Tr. 22-23.

The ALJ failed to follow steps required under 20 C.F.R. § 404.1520a for evaluating whether a claimant suffers from a mental impairment, a prerequisite to the question whether a mental impairment is "severe." See 20 C.F.R. §§ 404.1520a ("when we

4 Findings and Recommendation

evaluate the severity of mental impairments for adults . . . we must follow a special technique at each level in the administrative review process. We describe this special technique in paragraphs (b) through (e) of this section."); 20 C.F.R. § 404.1520a(d) ("After we rate the degree of functional limitation resulting from your impairment(s), we will determine the severity of your mental impairment(s)."). Those steps include evaluating whether any medically determinable mental impairment exists, rating the degree of resulting functional limitation, and recording findings. 20 C.F.R. § 404.1520a(b)-(c).

The record before this court does not indicate that the ALJ made any of the required demonstrations. Rather, the ALJ appears to have prematurely addressed the question whether plaintiff suffered from "severe" medically determinable mental impairments. The ALJ's failure to comply with 20 C.F.R. § 404.1520a precludes this court from engaging in meaningful review of the ALJ's step-two determination, and remand on this basis is required.[1] See Gutierrez v. Apfel, 199 F.3d 1048, 1050 (9th Cir. 2000) (noncompliance with 20 C.F.R. § 404.1520a(d) constitutes reversible error).

---

[1] In addition, the ALJ failed to include plaintiff's mental limitations in the RFC findings and to consider her borderline intellectual functioning. On remand, regardless of whether the ALJ determines plaintiff's mental impairments to be severe, he must include them in the RFC determination. 20 C.F.R. § 404.1523 ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.").

5 Findings and Recommendation

## 2. Plaintiff's subjective complaints

Plaintiff further contends that the ALJ erred in rejecting her subjective symptom testimony. In evaluating a claimant's subjective symptom testimony, an ALJ first reviews the record for objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of symptom. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996). Where the record lacks evidence of malingering, the ALJ may reject the testimony on credibility grounds by giving clear and convincing reasons supported by substantial evidence. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).

The ALJ rejected plaintiff's testimony for a number of reasons that fall short of the clear and convincing standard. First, the ALJ rejected her allegations based on asserted contradictions between plaintiff's activities of daily living and subjective complaints. The ALJ cited testimony from plaintiff's mother indicating that plaintiff cared for herself, prepared her own meals, kept house with chemical-free products, managed her finances and e-mailed, and went out for shopping and appointments. Tr. 24. In the ALJ's view, the performance of these activities of daily life is inconsistent with plaintiff's complaints of multiple chemical sensitivities and did not support a conclusion of work related limitations other than driving or cleaning. Id. I disagree.

Only where a level of activity is "inconsistent with [her] claimed limitations would these activities have any bearing on [c]laimant's credibility." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Here, plaintiff asserts that when she is

6 Findings and Recommendation

exposed to chemicals in work settings and during public activities, she suffers debilitating reactions. Plaintiff's activities in the controlled home environment do not detract from that assertion. Moreover, the fact that plaintiff must leave the home to shop and keep appointments does not contradict her claim that she suffers reactions when exposed to chemicals during those errands. In short, the record does not support the ALJ's determination that plaintiff's daily activities contravene her subjective symptom testimony.

The ALJ also reasoned that plaintiff's credibility is impaired because her symptoms "appear to be exaggerated, which has been recognized by various physicians of record." Tr. 25. The ALJ recited the list of reaction-triggering exposures that plaintiff identified (including smog, housecleaning products, petroleum fumes, air fresheners, and pesticides). Tr. 25. It is unclear, however, why the ALJ deems plaintiff's reports of reaction-triggering agents to be exaggerated. The ALJ stated that "various physicians of record" indicate that plaintiff exaggerated her symptoms. However, only one physician, Dr. Treyve, indicated that plaintiff's symptoms "sound exaggerated," in an evaluation that credited her complaints and indicated the need for further examination. His report stated:

> [T]his lady I think has a really difficult problem. She very likely has some underlying inhalant allergies such as dust mite allergy, which might be associated with these intolerances, which seemed to be that of hydrocarbon intolerances in her environment. Some of her symptoms sound exaggerated and some sound totally plausible. I suspect she may have underlying autoimmune disease and very likely fibromyalgia.

7 Findings and Recommendation

Tr. 307.

In context, the physician's report did not reject plaintiff's complaints; rather, he described, albeit in equivocating terms, how her report seemed, and how certain conditions might reasonably explain her complaints. The physician made no distinction between which symptoms "sound totally plausible" and which "sound exaggerated," and therefore provided no basis for the ALJ to dismiss the entirely of plaintiff's claims as "exaggerated." Seizing upon the bare term "exaggerated" in this physician's report alone does not substantiate the ALJ's conclusory statement that plaintiff's reports that certain agents trigger reactions "seem exaggerated," when no other basis is provided,[2] and when plaintiff's reports are substantiated by lay witnesses and physicians of record.

The ALJ noted that "no objective evidence" supported plaintiff's allegations that she had to leave a previous medical job due to chemical exposure in the workplace. However, her report is essentially corroborated by a physician who worked at the same office: "she came to work at our facility but began to have allergic reactions in the workplace to the point where she had to leave work, she could not even finish the two weeks notice that she gave. She really enjoyed working here. She was very popular here and it was a very unfortunate situation." Tr. 353.

---

[2]The ALJ also cited the report of Steven VanderWaal that he was somewhat skeptical of the diagnosis of multiple chemical sensitivities, Tr. 399. This report does not impugn plaintiff's credibility; rather, it states disagreement with an available medical conclusion. Further, it corroborates plaintiff's complaints of reactions to volatile chemicals or fumes. Id.

8 Findings and Recommendation

The ALJ also questioned plaintiff's credibility based on her cigarette and alcohol use. He noted that plaintiff indicated that cigarette smoking aggravated the problem. He further noted that plaintiff had attempted to use alcohol as a diuretic in order to self-treat the swelling that resulted from chemical exposures, but she ceased doing so after an alcohol-related accident. Tr. 26. The ALJ rejected plaintiff's credibility because her practice of smoking was inconsistent with her subjective symptom testimony, and her "alcohol consumption contradict[s] her claim of multiple chemical sensitivities." Tr. 26-27. I do not find this reasoning clear and convincing. Plaintiff ceased smoking after noting that cigarette use worsened her problem; thus, her former cigarette use supports her complaints. Further, the ALJ did not explain how plaintiff's alcohol use is inconsistent with her subjective complaints. The Commissioner points to no basis in the record to support the assumption that, if plaintiff is sensitive to certain chemicals, she should also react to chemicals in alcohol, and her alcohol use would therefore contradict her complaints. In sum, these bases for rejecting plaintiff's credibility are not clear and convincing.

Finally, the ALJ discounted plaintiff's credibility on the basis that plaintiff failed to pursue certain treatments and made baseless pain complaints. Tr. 25. Plaintiff's asserted failure to pursue treatment includes one instance in which plaintiff discontinued using a prescribed diuretic, and another instance in which she was referred to vascular surgery but did not follow

9 Findings and Recommendation

through. Tr. 26. The record indicates that "OHSU would not see her in their vascular surgery clinic." Tr. 353. The ALJ did not account for this evidence before concluding that plaintiff did not follow through, and for that reason, substantial evidence is lacking for the credibility conclusion founded on her failure to report for vascular surgery.

The record does, however, indicate that plaintiff discontinued a prescribed diuretic, but does not indicate why. Tr. 353. The record also supports the ALJ's determination that plaintiff's inguinal pain was not supported by significant clinical findings. Tr. 24. Upon remand, the ALJ may consider the weight and import of these matters in arriving at a determination concerning plaintiff's credibility that does not include the above inadequately substantiated conclusions.

3. Lay witness testimony

The record contains lay witness testimony from plaintiff's father, Nils Kristiansen. He reported that plaintiff experienced swelling and breathing problems after attempting to stay at his house, lacked the energy to get out of bed, had to avoid bleach, chemical cleaners, and petroleum products when trying to clean house. He explained that she cannot hold a job, noting, "[i]t is not what she does but where," adding, "[m]ost places have issues she can't deal with environmentally. It has curtailed her social life." Tr. 204-05. He reported that her conditions affect her concentration and her dealings with others. Tr. 205. Kristiansen further explained,

10 Findings and Recommendation

> I realize that my daughter's chemical sensitivity disorder does not fit neatly into your standard categories for disability. Her condition is however debilitating.
>
> I remember her getting occa[s]ional migraine headaches more than two years ago. The last two years it takes less and less to affect her to where she can't function. It takes longer bouts of fresh air to get her back to normal. She stayed with us over Christmas till Jan. 14th. She had problems with the air in our home. She would spend her days walking outside and trying to avoid traffic but that is not easy here. She seemed to have no energy in the morning and spent most of her time in the house in bed.

Tr. 207.

In a letter to the ALJ, Kristiansen wrote:

> Her condition has been worsening over the last few years, and it has reached the point where she is effectively disabled. She is unable to live in a regular house because of carpeting, glue chemicals in laminates, etc., etc. She has tried to live with us here in Bend, but our home contains the same chemical pollutants as almost all other homes, plus we live on a fairly trafficked downtown street. We have experimented with having her live with friends away from the downtown area, but she could not avoid coming into town for shopping, etc., and still was unable to work at a business. Car exhaust fumes are another major problem. Her symptoms include headaches, swelling of the face and limbs, chest pain and deep muscle fatigue. Her symptoms last for several days after a chemical exposure.

Tr. 238.

The ALJ did not address Mr. Kristiansen's testimony. The Commissioner contends that the ALJ <u>considered</u> the statements but "did not specifically discuss" them. Def. Memo. at 14. The Commissioner does not indicate any point in the ALJ's opinion that evidences that interpretation; rather he recites the ALJ's contention that he reviewed statements by third party witnesses

11 Findings and Recommendation

prior to the ALJ's discussion of particular witness testimony that did not include Nils Kristiansen. My review of the ALJ's findings does not reveal any indication that the ALJ considered Mr. Kristiansen's testimony in particular. "If the ALJ wishes to discount the testimony of the lay witness, he must give reasons that are germane to each witness." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993). Here, no such reasons were given.

"[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout v. Commissioner, 454 F.3d 1050, 1056-57 (9th Cir. 2006). In light of Mr. Kristiansen's testimony concerning the extent of plaintiff's inability to function in a number of common environments, I cannot confidently conclude that no reasonable ALJ would have reached a different disability determination.

### 4. Opinions of plaintiff's physicians

Lester v. Chater, 81 F.3d 821 (9th Cir. 1995), sets the standard for weighing physicians' opinions, and the bases on which they may be rejected. It explains:

> Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the

12 Findings and Recommendation

claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). We have also held that "clear and convincing" reasons are required to reject the treating doctor's ultimate conclusions. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990); Gallant v. Heckler, 753 F.2d 1450 (9th Cir. 1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. Pitzer, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.

Lester, 81 F.3d at 830-31 (footnote omitted).

A. Dr. Birney

As discussed above, the ALJ failed to address Dr. Birney's opinions under the procedure set forth in 20 C.F.R. § 404.1520a. Upon remand, the ALJ will have the opportunity to do so.

13 Findings and Recommendation

B. Dr. Hatlestad

Dr. Hatlestad opined in part that plaintiff was unable to maintain gainful employment as a result of her multiple chemical sensitivities. Tr. 327. The ALJ rejected that testimony on the grounds that Dr. Hatlestad "has not provided adequate support for his opinions about the claimant's diagnosis and prognosis." The ALJ added, "he has added that as a result of the claimant's multiple chemical sensitivity, 'she has difficulty tolerating most all work environments' (Exhibit 9F/54). However, he does not specify which environments the claimant is unable to tolerate." Tr. 28.

Neither reason is adequate. As explained in Smolen v. Chater, 80 F.3d 1273, 1287-88 (9th Cir. 1996), an ALJ's duty to develop the record prevents the ALJ from dismissing a medical opinion because the authoring doctor failed to explain its basis:

> In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). This duty exists even when the claimant is represented by counsel. Id. If the ALJ thought he needed to know the basis of Dr. Hoeflich's opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them. See 42 U.S.C. § 405(d)(1988); 20 C.F.R. § 404.950(d)(1991); 20 C.F.R. § 404.1527(c)(3). He could also have continued the hearing to augment the record. See 20 C.F.R. § 404.944 (1991). Having failed to fully develop the record regarding the basis for Dr. Hoeflich's opinions, the ALJ could not then reject those opinions-which were uncontroverted and corroborated-because they were given in response to leading, hypothetical questions.

Here, the ALJ was free to use the channels at his disposal to follow up on the issue of tolerable work environments, and the

14 Findings and Recommendation

basis for his diagnosis and prognosis. Further, the record corroborates Dr. Hatlestad's conclusion that plaintiff's chemical sensitivities preclude her from working in a number of environments, and the ALJ himself concluded -- based on evidence in the record -- that plaintiff indeed suffered from the diagnosis that Dr. Hatlestad determined, multiple chemical sensitivities. The ALJ erred in rejecting Dr. Hatlestad's opinions.

### C. Dr. Morgan

The ALJ summarized and then rejected the following opinion of examining physician Dr. Morgan:

> Dr. Morgan opined on June 1, 2004, that claimant was not capable of any type of employment at present time. She has definitely a physical illness, which is seriously incapacitating. There is no evidence of malingering, and this is not a psychophysiologic problem. Any elements of depression or emotional disturbance are deemed secondary to physical illness.

Tr. 28. The ALJ explained, "even if this physician does not consider the claimant a malingerer, other evidence of record notes inconsistencies, exaggerations or inadequate validity, as stated hereinbefore." Id. Here, the ALJ has identified a conflict in evidence, but he does not indicate which physician of record, if any, provided conflicting evidence. Thus, the court measures the ALJ's rationale under the clear and convincing standard. I find no specific citation of inconsistency or exaggeration that would allow an adequate review of the ALJ's finding. To the extent that the ALJ based his reasoning on erroneously considered credibility evidence described above,

15 Findings and Recommendation

reconsideration of this evidence on remand would be required.

### D. Dr. VanderWaal

The ALJ characterized the opinion of Dr. VanderWaal, one of plaintiff's examining doctors, in this way:

> Dr. VanderWaal reported on July 1, 2004, there were no objective findings on [plaintiff's] examination that would physically keep her from working. However, subjectively she has symptoms when exposed to perfumes, chemicals or other toxins. This makes it difficult for her to work with the public. From a physical standpoint, it would be expected that she could perform any job activity for which she is qualified. There are no limitations on her ability to sit, stand or walk. She can hear and speak without difficulty, and she is also able to travel. Based on her symptoms alone, she should avoid exposure to volatile chemicals or fumes.

Tr. 29. He then rejected the opinion on the basis that "the claimant has been smoking and drinking alcohol during the period under consideration in this decision, which undermines her complaints of chemical sensitivities." Id. As I explained above, plaintiff ceased smoking after noting that cigarette use worsened her problem; thus, her former cigarette use supports her complaints. And, again, the ALJ did not explain how plaintiff's alcohol use is inconsistent with her subjective complaints. Absent any basis in the record to support the assumption that, if plaintiff is sensitive to certain chemicals, she should also react to chemicals in alcohol, there is no clear and convincing basis to conclude that plaintiff's alcohol use would contradict her complaints.

E. Dr. Mead

The ALJ summarized the opinion of Dr. Mead, a treating physician:

> Dr. Mead opined in November 2004 that claimant's disease significantly interferes with her ability to concentrate and remember in a work setting. She could not tolerate even a minimal stress load in a work setting. She requires to sleep at certain times throughout the day. She would require many unsceduled breaks and even frequent absenteeism from the work place.

Tr. 29. Dr. Mead's opinion was based on the theory that plaintiff's sensitivities were caused by mercury toxicity. Tr. 375-91. The ALJ rejected Dr. Mead's opinion on the basis that Dr. Sudakin, a reviewing physician and specialist in medical toxicology, criticized the testing method used by Dr. Mead and had concluded that mercury intoxication was an unsupportable diagnosis. Tr. 29. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . an examining physician[.]" Lester, 81 F.3d at 831. Here, it is clear that the ALJ identified a conflict between the opinions of an examining and reviewing physician, but he cannot solely rely on the opinion of Dr. Sudakin, a reviewing physician, in order to reject the opinion of Dr. Mead, who examined plaintiff.

F. State agency physicians

The ALJ rejected the opinion of state agency physicians because "[t]he diagnosis of multiple chemical sensitivities has been questionable. Her complaints have been exaggerated and are

17 Findings and Recommendation

not supported by objective findings." Tr. 30. The ALJ's reasoning is insufficient. As noted above, the ALJ determined that the record supported his own conclusion that plaintiff suffered from multiple chemical sensitivities. Further, the record does not support the contention that plaintiff's complaints are not supported by objective findings; for example, physicians recorded edema, an observable aspect of plaintiff's reaction to chemical exposure. See Tr. 346. The ALJ's stated basis for rejecting the opinions of the agency physicians is inadequate.

5. Vocational hypothetical

Plaintiff finally contends that the ALJ erred in failing to pose a vocational hypothetical that included all of plaintiff's limitations. The court agrees. The ALJ's hypothetical did not include plaintiff's mental limitations. Tr. 660-61. On remand, those limitations, and any others that may become evident upon the ALJ's reconsideration of the evidence according to the court's, must be included in a valid vocational hypothetical. See Russell v. Sullivan, 930 F.2d 1443, 1445 (9th Cir. 1991) (explaining rule).

//
//
//
//

18 Findings and Recommendation

## Conclusion

In conclusion, the decision of the Commissioner should be reversed and the case remanded for further proceedings consistent with this opinion.

Dated this 8t day of March, 2008.

_____
THOMAS M. COFFIN
United States Magistrate Judge

19 Findings and Recommendation